UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>                          v.<br><br>**ASU PALA,**<br>                    **Defendant** | **Criminal Case No. 10-CR-10103-NMG** |

## UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

The United States moves this Court to sentence Defendant Asu Pala to 92 months of imprisonment (or 15% below the bottom of whatever guideline sentence the Court calculates); a fine of $15,000, unless the Court finds that Mr. Pala is unlikely to become able to pay a fine; restitution of $2,287,993 to the IRS for back taxes from tax years 2003 through 2007; forfeiture of $7,941,336.88, a mandatory special assessment of $225; and 36 months of supervised release following his release, subject to the following special conditions:

        (i)       Defendant must obtain and complete counseling for substance abuse;

        (ii)      Defendant must obtain and complete counseling for anger management;

        (iii)     Defendant must obtain and complete counseling for gambling;

        (iv)     Defendant must obtain and complete counseling for credit-, debt-, or other money-management problems; and

        (v)      during the period of supervised release, Defendant must, within six months of sentencing or release from custody, whichever is later:

              (A)     cooperate with the Examination and Collection Divisions of the Internal Revenue Service;

       (B)    provide to the Examination Division all financial information necessary to determine Defendant's prior tax liabilities;

       (C)    provide to the Collection Division all financial information necessary to determine Defendant's ability to pay;

       (D)    file accurate and complete tax returns for those years for which returns were not filed or for which inaccurate returns were filed; and

       (E)    make a good faith effort to pay all delinquent and additional taxes, interest and penalties.

*Sentencing Guidelines*

The government's sentencing guideline calculations are set forth in detail in the plea agreement. They arrive at a total adjusted offense level of 34 before accounting for acceptance of responsibility. After accounting for acceptance of responsibility, the offense level should be reduced 3 levels, to 31.

The major difference between the government's and the PSR's sentencing guideline calculations is the question of whether the conspiracy had more than 250 victims, which would result in a 6-level increase under U.S.S.G. § 2B1.1(b)(2)(C), or whether, as the PSR concludes, the government has not borne its burden of proof on this enhancement. *See* PSR ¶ 32(B). The government's analysis and the PSR's rejection of that analysis are set forth in the Addendum to the PSR. PSR, at 20-23.

The government concedes that it does not know the exact number of victims or the average amount that each victim lost, due to the complexity of the offense, the complexity of the evidence that it would have to analyze, and the international nature of the offense. However, the

reason to believe that there were more than 250 victims stems from the fact that Mr. Pala made almost $8 million from November 2003 through some point in 2007 by defrauding people into paying unnoticed excess charges on their telephone bills. Had *fewer* than 250 victims confronted almost $8 million in excess telephone charges, the charges would have been so large that the victims would have noticed them, contested them, and not paid them to Mr. Pala or his co-conspirators. *See* Addendum to the PSR, at 20-21. Instead, the charges were set small enough to go unnoticed, in which case the number of victims must have been greater than 250.

The PSR concedes that this theory "seems plausible," but rejects it because corporate victims might have ignored larger charges than individual victims and, in any case, a mathematical analysis of this generality is insufficient to decide a guidelines issue. Addendum to the PSR, at 21-23.

The government respectfully disagrees. Defendant has essentially conceded that the excess charges were small. In his sentencing memorandum, he states that the "amounts of fraud per-person were extremely low," and that "[t]his was a financial loss involving small amounts of money." Sentencing Memorandum on Behalf of Defendant and Motion for Variant Sentence [dkt. # 13], at 9.[1] Given these concessions, the Court should conclude that the charges were low and that the number of victims who incurred these low excess charges must have been more than 250 in order to generate almost $8 million in illegal income to Defendant from the end of 2003 through some time in 2007.

With more than 250 victims, Defendant's total offense level after accounting for

---

[1] Defendant does suggest, however, that the victims most likely contested the charges with their telephone companies and were likely recompensated by the companies.

acceptance of responsibility, would be 31. The guideline sentencing range for offense level 31 and criminal history category of I is 108 to 135 months.

***18 U.S.C. § 3553(a) Factors***

The PSR suggests no facts to support a downward departure or variance under 18 U.S.C. § 3553(a). Defendant made huge sums of money by perpetuating a sophisticated international computer fraud over a protracted period. He also failed to pay more in taxes (about $2.25 million) than most people make in income over their entire lives. Moreover, he has a history of domestic violence, PSR ¶ 66; gambling, PSR ¶¶ 74-75; and substance abuse, PSR ¶ 76. (These are the grounds for the special conditions of release urged above.) Mr. Pala has some medical issues, PSR ¶¶ 72-72B, but those can be addressed in prison, and health issues should not generally excuse jail time. U.S.S.G. § 5H1.4.

Moreover, computer crime can be very lucrative, but difficult to detect, difficult to investigate, and difficult to prosecute, especially when it crosses international borders. Allowing serious tax cheats to avoid jail would merely encourage the practice. Consequently, a serious jail sentence is necessary "(A) to reflect the seriousness of the offense[s], to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)-(B).

The government, however, is recommending a variance of 15% (16 months) off the low end of the guidelines (108 months), for an ultimate recommendation of 92 months of incarceration. The government recommends this variance based upon Mr. Pala's efforts to redress computer crime beginning shortly after the government contacted him. Since mid-May 2009 through the Fall of 2010, Mr. Pala worked with the government to obtain evidence of his

crimes, to identify suitable computer hackers here and abroad to investigate and prosecute, and to identify the methods for doing so. To do so, Mr. Pala met with this office on several occasions and was debriefed by law enforcement agents numerous times. He also consented to the government's sending law enforcement reports concerning his efforts to a foreign government for the purpose of furthering the foreign government's criminal investigation.

Although these efforts have not resulted in "substantial assistance in the investigation or prosecution of another person who has committed an offense" within the meaning of U.S.S.G. § 5K1.1, they do reflect "the history and characteristics of the defendant" within the meaning of 18 U.S.C. § 3553(a)(1). Specifically, they reflect Mr. Pala's efforts at rehabilitation, which should be rewarded.

For these reasons, the government supports a 15% downward variance, for an ultimate sentence of 92 months of incarceration, plus the other punishments (restitution, forfeiture, supervised release, and special assessment) urged above. The same downward variance should apply if the court calculates Mr. Pala's sentencing guidelines in a manner different from the government. In other words, if the Court concludes that Mr. Pala's final total offense level is 27, as calculated in PSR ¶ 50, then the Court should vary 15% downwards from the guideline sentence of 70 to 87 months.

*Victim Notification*

The government's motion to employ alternative methods of notifying victims of Mr. Pala's sentencing hearing has not been ruled on yet. The Court might wish to address this issue at the sentencing hearing and consider whether to delay imposing judgment in this case in order to give victims the opportunity to identify themselves and voice their concerns.

*Conclusion*

For the reasons given above, Defendant Asu Pala should be sentenced to 92 months of imprisonment (or 15% below the bottom of whatever guideline sentence the Court calculates); a fine of $15,000, unless the Court finds that Mr. Pala is unlikely to become able to pay a fine; restitution of $2,287,993 to the IRS for back taxes from tax years 2003 through 2007; forfeiture of $7,941,336.88, a mandatory special assessment of $225; and 36 months of supervised release following his release, subject to the following special conditions:

    (i)    Defendant must obtain and complete counseling for substance abuse;

    (ii)    Defendant must obtain and complete counseling for anger management;

    (iii)    Defendant must obtain and complete counseling for gambling;

    (iv)    Defendant must obtain and complete counseling for credit-, debt-, or other money-management problems; and

    (v)    during the period of supervised release, Defendant must, within six months of sentencing or release from custody, whichever is later:

        (A)    cooperate with the Examination and Collection Divisions of the Internal Revenue Service;

        (B)    provide to the Examination Division all financial information necessary to determine Defendant's prior tax liabilities;

        (C)    provide to the Collection Division all financial information necessary to determine Defendant's ability to pay;

        (D)    file accurate and complete tax returns for those years for which returns were not filed or for which inaccurate returns were filed; and

   (E) make a good faith effort to pay all delinquent and additional taxes, interest and penalties.

               Respectfully submitted,

               CARMEN M. ORTIZ
               United States Attorney

         By: */s/ Scott L. Garland*
            Scott L. Garland
            Assistant U.S. Attorney

Date: February 7, 2011

## CERTIFICATE OF SERVICE

 I, Scott L. Garland, Assistant U.S. Attorney, certify that this document is being filed through the ECF system and therefore should be sent electronically to the registered participants.

               */s/ Scott L. Garland*
               Scott L. Garland
               Assistant U.S. Attorney

Date: February 7, 2011